IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

EDWARD L. CUNNINGHAM,

              Petitioner,

           v.

KATHERINE MACFARLAND,
Administrator, South Woods
State Prison, and
PETER C. HARVEY, Attorney
General of New Jersey,

             Respondents.

HONORABLE JEROME B. SIMANDLE

Civil Action No. 02-3422 (JBS)


**OPINION**

---

APPEARANCES:

Edward L. Cunningham
#272391
#455648B, D-Unit
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302
    Petitioner pro se

Catherine Atoine Foddai, Esq.
Bergen County Prosecutor's Office
Bergen County Justice Center
Hackensack, NJ 07601
    Attorney for Respondents

**SIMANDLE**, District Judge:

    Petitioner Edward L. Cunningham brings this pro se action

for habeas corpus relief pursuant to 28 U.S.C. § 2254.  This

matter comes before the Court on Respondents' Answer, which

maintains that Petitioner's claims are either without merit, or

should be denied based on certain affirmative defenses.[1]  For the
following reasons, Mr. Cunningham's petition will be denied.

I.   BACKGROUND

 A.   Facts

Factual determinations made by a state court shall be
presumed correct by a federal court entertaining an application
for a writ of habeas corpus.  28 U.S.C. § 2254(e)(1).  As
determined by the state appellate court, Petitioner's conviction
arose out of the fatal shooting of Bobby Gore on January 9, 1992
in Camden, New Jersey.  (Resp.'s Ex. 5 at 3.)  Two armed men
confronted Gore and three friends in order to rob them.  (Id.)
The Gore group scattered after the confrontation, and shots were
fired.  One shot hit Gore in the back, killing him.  (Id.)  A

---

[1]Mr. Cunningham subsequently filed a traverse entitled
"Supplemental Brief" that presents some arguments that were not
raised in his initial petition.  This traverse was considered
only to the extent it informed the initial application.  This
Court had previously informed Mr. Cunningham of his opportunity
under Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000), to file an
amended petition asserting additional grounds or having the Court
rule upon the petition as submitted.  (See Order of August 27,
2002.)  In his response, Petitioner requested that the Court rule
upon his Petition without any new grounds being raised.  (See
Petitioner's letter response, filed September 17, 2002.)
Thereafter, Respondents filed their Answer and Appendix
containing the relevant State Court proceedings on December 20,
2002, addressing all grounds raised in the unamended petition.
The Petitioner, having had the opportunity to raise any and all
additional grounds in the Miller Order and having declined to do
so in his response on September 17, 2002, cannot raise new
grounds after the Respondents' answer was filed.  Those
additional grounds (that the trial court gave an improper charge
concerning flight and that the verdict was against the weight of
evidence) will not be considered further.

police investigation of the shooting led to Brian Foster and Lamont Wynne, who admitted witnessing or minor participation in the crime, and also implicated the Petitioner.  (<u>Id</u>. at 3.)

With this information, and an alleged writ for a grand jury appearance, Investigator Arthur Folkes and Detective Richard Desmond signed Mr. Cunningham out of prison, where he was serving time on an unrelated charge.  (Resp.'s Ex. 15 at 16; Resp.'s Ex. 23 at 27.)  They took him to the Camden County Prosecutor's office, where Mr. Foster and Mr. Wynne implicated him in the crime.  (Resp.'s Ex. 15 at 21.)  Mr. Cunningham subsequently gave a taped statement in which he admitted associating with Foster and Wynne, and witnessing the killing, but denied involvement in the robbery plan.  (<u>Id</u>. at 21-22.)   Foster and Wynne pleaded guilty to aggravated manslaughter and robbery charges, and agreed to testify against the Petitioner.  (Resp.'s Ex. 5 at 3-4.)  None of the three admitted to the shooting, but each blamed the other two.  (<u>Id</u>.)  Mr. Cunningham was indicted for felony-murder, purposeful or knowing murder, aggravated manslaughter, manslaughter, four counts of first and second-degree robbery, two weapons charges, and conspiracy to commit first and second-degree robbery.  (Resp.'s Ex. 1 at 1A-13A.)

    B.   <u>Procedural History</u>

       1.   <u>Trial</u>

At trial in the Superior Court of New Jersey, Petitioner echoed his earlier taped statement and continued to claim he did

3

not participate in the plan to rob the Gore group.  (Id. at 4.)
He admitted joining Foster and Wynne in a car at their invitation
before the crime, but maintained that he left the vehicle out of
concern for their plan and, apparently, his own safety.  (Id.)
Mr. Cunningham claimed he then walked toward the scene of the
crime because he was "nosey," and was in the vicinity at the time
of the shooting as a bystander.  (Id.)

A jury found Petitioner guilty of felony-murder, second-
degree robbery, conspiracy to commit first-degree robbery, and
manslaughter, on April 26, 1995.  (Resp.'s Ex. 21 at 11-13,16.)
Mr. Cunningham was acquitted of purposeful or knowing murder,
aggravated manslaughter, robbery in the first degree, and two
weapons charges.  (Id. at 11-12.)  The trial court merged all
counts into felony-murder, applied aggravating factors, and
sentenced Petitioner to sixty years in prison with a thirty-year
parole disqualifier.  (Resp.'s Ex. 22 at 21-23.)  Mr. Cunningham
subsequently appealed his conviction, and filed a petition for
post conviction relief.

### 2.   Direct Appeal

Petitioner's direct appeal raised four issues that are
relevant to the instant petition: (1) denial of his right to fair
trial by the trial court's failure to charge the defense of
duress; (2) that his statement to investigators should have been
excluded because he did not voluntarily waive his Miranda rights;
(3) that the verdict was against the weight of the evidence, and

4

(4) that his felony-murder conviction must be vacated because a predicate offense was not established. (Resp.'s Ex. 5 at 2.) On April 3, 1997, the Superior Court of New Jersey, Appellate Division affirmed the convictions but vacated certain monetary penalties which had been imposed. (Id. at 9.) The Supreme Court of New Jersey denied certification in an order filed June 18, 1997. State v. Cunningham, 695 A.2d 671 (N.J. 1997).

      3.   Petition for Post Conviction Relief

Mr. Cunningham filed a petition for post conviction relief on two grounds, both of which are relevant to the instant petition. First, he claimed ineffective assistance of trial counsel, arguing that counsel failed to raise the affirmative defense of duress, that counsel failed to challenge a Miranda card the prosecution claimed Mr. Cunningham signed, and that counsel failed to investigate a sworn statement by Mr. Anthony Johnson suggesting third party guilt. (Resp.'s Ex. 8 at Da41.) Second, Mr. Cunningham claimed that he was denied due process by the usurpation of judicial power. (Resp.'s Ex. 8 at Da34, Da45.) He asserted that he was compelled to leave prison on the stated purpose of complying with a grand jury writ, but was instead brought to the prosecutor's office for questioning. (Resp.'s Ex. 8 at Da45.)

The Superior Court of New Jersey rejected the petition. (Resp.'s Ex. 25 at 54.) The order denying relief was affirmed by the Appellate Division on December 18, 2001. (Resp.'s Ex. 10 at

5

6.)   The Supreme Court of New Jersey subsequently denied
certification on April 3, 2002.   <u>State v. Cunningham</u>, 796 A.2d
894 (N.J. 2002).

    C.   <u>Petition for Habeas Corpus</u>

    Mr. Cunningham filed a petition seeking a writ of habeas
corpus pursuant to 28 U.S.C. § 2254 on July 15, 2002.  He seeks
relief on the following grounds: (1) his trial counsel was
ineffective because he failed to advise him of evidence
implicating a third party; (2) his due process rights were
violated because the investigators brought him to the
prosecutor's office on a false pretense, and he was interrogated
under threat and psychological abuse; (3) his due process rights
were violated because he was questioned despite requests for
counsel, and he denies ever signing a <u>Miranda</u> card presented at
trial; (4) evidence of third party guilt in the form of a
statement by Anthony Johnson was not admitted at trial; (5) his
right to a fair trial was denied because he went to the crime
scene under threat by the co-defendants, and the court failed to
charge the affirmative defense of duress; (6) the jury verdict
for murder was inconsistent because the victim died of a gunshot
wound and Petitioner was found not guilty of crimes involving a
weapon.  (Pet. at 5-6a.)

II.   <u>DISCUSSION</u>

    A.   <u>Jurisdiction</u>

Under 28 U.S.C. § 2254(a),

> a district court shall entertain an
> application for a writ of habeas corpus in
> behalf of a person in custody pursuant to the
> judgment of a State court only on the ground
> that he is in custody in violation of the
> Constitution or laws or treaties of the
> United States.

28 U.S.C. § 2254(a).  Here, Mr. Cunningham is in custody at South
Woods State Prison in Bridgeton, New Jersey pursuant to a
judgment by the Superior Court of that state.  He alleges that
his Fourteenth and Sixth Amendment rights to due process and fair
trial were violated prior to his conviction.  Thus, this Court
has jurisdiction to hear his claim pursuant to 28 U.S.C. §
2254(a).

    B.   <u>Standard of Review</u>

Relief under § 2254 will not be granted unless "the
applicant has exhausted the remedies available in the courts of
the State . . . ."  28 U.S.C. § 2254(b)(1).  Furthermore, an
application will not be granted pertaining to any claim
adjudicated on the merits by a competent state tribunal unless it
"resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States . . . ."  28
U.S.C. § 2254(d)(1).

A state court's decision is "contrary to" federal law when

7

it is "opposite to that reached by" the Supreme Court on a matter of law, or it arrives at a different conclusion "on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529 U.S. 362, 364-65 (2000).  An "unreasonable application" of "clearly established" federal law must be objectively unreasonable, not simply incorrect or erroneous.  <u>Id</u>. Furthermore, federal law is "clearly established" when it is based on the holdings of the Supreme Court, not merely dicta, that are available at the time of the state ruling.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71-71 (2003) (citing <u>Williams</u>, 529 U.S. at 412).

     C.    <u>Petitioner's Claims</u>

          1.    <u>Ineffective Assistance of Counsel</u>

In <u>Ground One</u>, Petitioner claims that his trial counsel, Louis D. Fletcher, Esq., was ineffective because he failed to advise him of a sworn statement by Anthony Johnson given to detectives before the trial.  (Pet. at 5; Trav. at 7.)  Mr. Johnson claimed a third party, Mr. Molina, hired two others to kill Mr. Gore because he was selling drugs in Mr. Molina's territory.  (Trav. at 7.)  Petitioner claims counsel never informed him about this statement.  (Pet. at 5.)  In <u>Ground Four</u>, Petitioner asserts there was evidence of third party guilt not presented at trial, again referencing Mr. Johnson's statement.

8

(Pet. at 6.)  Since counsel never sought to admit this evidence, this Court considers these two allegations together under Petitioner's ineffective assistance of counsel claim.

The Sixth Amendment guarantees criminal defendants effective counsel, whether that counsel is appointed or retained.  Evitts v. Lucy, 469 U.S. 387, 395 (1985).  The benchmark for judging an ineffective assistance of counsel claim was set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), and requires a district court to consider "whether counsel's conduct so undermines the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Id. at 686.  This Court must be "highly deferential" and "avoid the distorting effects of hindsight" that might arise from an adverse sentence.  Id. at 669.  Petitioner must (1) rebut a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and (2) if a deficiency exists, it must actually be "prejudicial to the defense" in order to establish a violation.  Id. at 689-92.

As for Petitioner's claim that counsel was ineffective for failing to investigate Mr. Johnson's statement, "a particular decision not to investigate must be directly assessed for reasonableness . . . applying a heavy measure of deference to counsel's judgments."  Id. at 691.  The Superior Court of New

9

Jersey examined this claim in a hearing pursuant to Mr. Cunningham's petition for post conviction relief.  Mr. Fletcher, questioned five years after the trial, had difficulty recalling specifics of the discovery process in the case.  (Resp.'s Ex. 25 at 17-35.)  However, he related that it was "always" his practice to review discovery with clients.  (<u>Id</u>. at 19.)  The court examined him on his approach to trial strategies in the face of conflicting statements, and his practice of pursuing potentially exculpatory leads.  (<u>Id</u>. at 36-40.)

Based on the testimony and the circumstances of the case, the Superior Court applied <u>Strickland</u>, and found that Mr. Fletcher provided Mr. Johnson's statement to the Petitioner. (<u>Id</u>. at 49.)  The court reached this conclusion first because Mr. Cunningham acknowledged receiving a "considerable amount" of discovery from counsel, and there was no reason provided as to why Mr. Fletcher would have withheld that one item.  (<u>Id</u>.) Second, Mr. Fletcher was an attorney with an "excellent reputation" and 21 years of experience at the time; it flew "in the face of logic" to claim that he "singled out this one particular piece of evidence and withheld it."  (<u>Id</u>. at 50.)

Furthermore, the court found that Mr. Fletcher's failure to pursue the defense presented by Mr. Johnson's testimony "was a trial strategy that was well within the standards of the Sixth

Amendment" and "nothing ha[d] been presented" to rebut the presumption of acceptable conduct. (Id. at 52.)  The court noted that "Mr. Cunningham had given a sworn statement that he saw Foster shoot Gore." (Id. at 51.)  Mr. Johnson's statement contradicted Petitioner's own statement, and basing a defense strategy on it would have been "difficult." (Id.)  Because Petitioner failed to establish that Mr. Fletcher's performance was outside of the Sixth Amendment standard under the first prong of Strickland, the court found that it was unnecessary to reach prejudice under the second prong. (Id. at 53.)  The appeals court agreed, finding the decision by counsel not to contradict the Petitioner's own statement, as well as the testimony of the two co-defendants, was "entirely reasonable." (Resp.'s Ex. 10 at 5.)

The state court's analysis of counsel's assistance was consistent with Strickland; nothing in the record or in the petition is sufficient to rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" under the Sixth Amendment.  466 U.S. at 689.  The state court's further determination that it need not reach the second prong of Strickland was correct based on this finding.  The state courts applied the language and methodology of Strickland in their careful scrutiny of the record, and in

11

questioning Mr. Fletcher.  It is apparent to this Court that Mr. Johnson's statement would have been problematic and of doubtful value in Mr. Cunningham's defense.  The state courts' subsequent determination that Mr. Fletcher's assistance was not ineffective was not contrary to, or an unreasonable application of, federal law.  Mr. Cunningham's petition therefore fails on his claim of ineffective assistance of counsel.

### 2.   Due Process Violation: Miranda Rights

Petitioner also claims that his pretrial statement should have been excluded because he did not voluntarily waive his Miranda rights.  (Pet. at 6.)  He claims he was subject to "several hours of interrogation and threats."  (Id.)  He also claims the detectives failed to stop their interrogation after he requested counsel, and was unable to contact an attorney by phone.  (Id.)  Furthermore, Petitioner denies signing a Miranda card that was later presented at trial to substantiate his statement.  (Id.)  Respondents contend that the state courts did not unreasonably apply federal law in finding that Mr. Cunningham voluntarily waived his rights.  (Ans. at 15-19.)

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held that a detained person subject to questioning

> must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily,

> <u>knowingly and intelligently. If, however, he</u>
> <u>indicates in any manner and at any stage of</u>
> <u>the process that he wishes to consult with an</u>
> <u>attorney before speaking there can be no</u>
> <u>questioning</u>.

<u>Id</u>. at 444-45 (emphasis added).   Under <u>Miranda</u>, therefore,
Petitioner's claim requires an inquiry into (1) whether he waived
his rights voluntarily, knowingly, and intelligently and (2)
whether the acquisition of Mr. Cunningham's statement was barred
by a request for counsel.

a.   <u>Waiver of Miranda Rights</u>

In <u>Ground Three</u>, Mr. Cunningham claims he was threatened
into making a statement, and denied signing a <u>Miranda</u> card that
was presented at trial.  (Pet. at 6.)   In <u>Ground Two</u>, he claims
he was "psychologically abused and coerced into a confession."
(Pet. at 5.)   Both allegations are considered together in
examining the voluntariness of his <u>Miranda</u> waiver in making the
statement.   Petitioner claims he was threatened with an
ultimatum; either to waive his <u>Miranda</u> rights or testify before a
grand jury.  (Trav. at 28.)   At trial, Investigator Folkes did
not deny presenting such a choice to Mr. Cunningham.  (Resp.'s
Ex. 13 at 53-54.)   The trial court conducted a Miranda hearing to
determine the admissibility of the statement.  (Resp.'s Ex. 15 at
3-22.)

A confession may be involuntary when it results from
psychological or physical coercion, however psychological
coercion does not render it involuntary <u>per se</u>.   <u>Miller v.</u>

13

Fenton, 796 F.2d 598, 603-04 (3d Cir.), cert. denied, Miller v.
Neubert, 479 U.S. 989 (1986).  Instead, "the court must consider
the effect that the totality of the circumstances had upon the
will of the defendant."  Id. at 604.  In this case, the court
heard testimony and examined evidence to determine if Petitioner
understood his rights.  The following exchange pertaining to the
Miranda card occurred during Mr. Cunningham's cross examination:

> Q    Now, I'm gonna show you what's
>      been marked S-1 . . . . Have
>      you ever seen that card
>      before, sir?
>
> A    Yes, sir.
> Q    All right.  Whose signature
>      appears at the bottom there?
>
> A    That's mine.
>
> Q    And it's dated 7/29/93, 11:20
>      a.m., is that correct?
>
> A    Yes.
>
> Q    All right.  And who did you
>      sign this in the presence of?
>
> A    Mr. Clark.
>
>               . . .
>
> Q    And let me ask you this.
>      Could you estimate for us how
>      many times you've been
>      arrested?
>
> A    About seven times.
>
>               . . .
>
> Q    [D]id you ever have your
>      Miranda rights read to you
>      before?

14

    A    About twice, yes.

    Q    So you understood what those rights were?

    A    Yes.

    . . .

    Q    Now, when you went on the formal taped statement those same rights were read to you again, is that correct?

    A    Yes.

    Q    And you indicated that you understood them and that you wished to give a statement without an attorney, is that correct?

    A    Yes, because I was under the impression that they said you're not being charged with nothing, just tell us your version of what happened, that's why I told.

(Resp.'s Ex. 13 at 94-95.)

    The court noted that "Mr. Cunningham has some computer skills, that he has obtained a G.E.D., to his credit, so he is not someone who was either inarticulate, as witnessed by his testimony, or an unintelligible gentleman.  To the contrary, he has impressed the Court as a very intelligent person."  (Resp.'s Ex. 15 at 19.)  The court determined that Petitioner's decision to make a statement was motivated not by coercion, but by self-preservation after being implicated by the co-defendants.  (Id. at 22.)  Believing that he "was clearly implicated by them . . .

[he] made a determination that he wasn't going to take the fall, and he then made a statement voluntarily knowing what his rights were . . . ." (<u>Id</u>. at 21.)

The trial court carefully weighed evidence and testimony bearing on the voluntariness of Mr. Cunningham's statement, his knowledge of his rights, and his intelligence.  Respondents amply demonstrate, in accord with the reasoning of the trial court, that the pressure Petitioner faced is not cognizable as coercion sufficient to render the statement involuntary.  (Ans. at 15-18.) <u>See</u> <u>Darwin v. Connecticut</u>, 391 U.S. 346 (1968) (will overborne when defendant was prevented from contacting attorney or anyone else for thirty to forty-eight hours); <u>Gallegos v. Colorado</u>, 370 U.S. 49 (1962) (will overborne when fourteen-year old defendant was detained with no outside contact for five days).  The trial court's decision to admit Mr. Cunningham's statement at trial was not an unreasonable application of federal law, particularly in light of Mr. Cunningham's own testimony.

b.   <u>Alleged Request for Counsel</u>

Petitioner claims in <u>Ground Three</u> that he "repeatedly asked for legal counsel" but the "interrogation" continued.  (Pet. at 6.)  Respondents contend that the trial court found no such request was made, and this determination was not an unreasonable application of federal law.  (Ans. at 18-19.)  In <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981), the Supreme Court expanded on <u>Miranda</u>, finding

16

> an accused . . . having expressed his desire
> to deal with the police only through counsel,
> is not subject to further interrogation by
> the authorities until counsel has been made
> available to  him, unless the accused himself
> initiates further communication, exchanges,
> or conversations with the police.

Id. at 484-85 (1981).  Re-interrogation is impermissible where a

request for counsel is "clearly asserted."  Id. at 485.  Courts

must determine whether or not the right to counsel was invoked by

a defendant, and if so whether that right was subsequently

waived.  Smith v. Illinois, 469 U.S. 91, 95 (1984).

In his Miranda hearing testimony, Petitioner claimed he had

requested counsel.  (Resp.'s Ex. 13 at 82.)  He was unsuccessful

in contacting an attorney and called his grandmother to help.

(Id. at 84.)  Mr. Cunningham testified that he "stopped talking

to them" and "was just listening to them" when detectives brought

in the co-defendants who were asked if "this [was] the man you

all talking about[?] and they both said yeah."  (Id. at 85.)

Petitioner then claims he was asked to tell the investigators his

version to avoid being charged, and he chose to make a statement

without counsel.  (Id. at 88.)

After the Miranda hearing, the trial court found that

Petitioner was properly warned, knew his rights, and, after

initial hesitation, agreed to make a voluntary statement once he

realized the co-defendants implicated him.  (Resp.'s Ex. 15 at

21.)  The court looked at Petitioner's circumstances and stated

> there is nothing this Court is aware of that
> . . . any defendant after saying: I don't
> want to go forward or I want an attorney,
> can't change his mind and say: I want to give
> a statement and I don't care whether I am
> represented or not represented . . . . <u>If I
> were to find . . . that the request was made,
> which, by the way I don't find . . . it is
> clear to me once confronted by [co-
> defendants' accusations] he made a
> determination voluntarily to make a
> statement</u>, and he did so after having been
> read his Miranda rights at least three times
> and perhaps four.

(<u>Id</u>. at 21-22) (emphasis added).  It is not clear from the

judge's statement whether he found that a request for counsel was

not made, or that he found a conclusion unnecessary.  He resolved

the question on Petitioner's voluntary and informed decision to

waive his rights and make a statement after circumstances

changed.

On direct appeal, the Appellate Division read the trial

court's decision as conclusive with regard to the request:

> [The defendant] contends that the police
> officers failed to scrupulously honor his
> request for counsel and consequently violated
> his constitutional right by interrogating him
> after he requested counsel.  The officers,
> however, denied that a request for counsel
> had been made.  The judge decided that
> credibility issue against the defendant, and
> . . . <u>we defer to his finding that the
> request was not made</u>.

(Resp.'s Ex. 5 at 7) (emphasis added).  Respondents adopt this

view, and assert that Petitioner never invoked <u>Miranda</u>

protection, since a request for counsel was not made.  (Ans. at

14.)

18

The appellate court's interpretation of the trial court would establish the absence of a request for counsel as a matter of fact; a determination that this Court would be bound to presume.  Under an alternate interpretation, the trial court did not necessarily find that Mr. Cunningham did not request counsel. Instead, he voluntarily waived his right to counsel when he chose to speak, revoking any right he might have asserted. Petitioner's claim fails under either interpretation.  <u>Miranda</u> permits a request for counsel to be revoked.  The trial court concluded that, even if Petitioner requested counsel, he voluntarily, knowingly and intelligently revoked that right when confronted with the co-defendants' accusations.  This determination was not an unreasonable application of federal law, and this Court denies the petition on this ground.

3.   <u>Due Process Violation: False Pretense of Writ</u>

In <u>Ground Two</u>, Petitioner claims that Detectives Desmond and Folkes used a writ for a Camden County Grand Jury to remove him from prison, where he was incarcerated on unrelated grounds. (Pet. at 5; Trav. at 16.)  Instead of taking him to a grand jury, however, the officers took him to the Camden County Prosecutor's office and questioned him.  (Pet. at 5.)[2]  This led to Mr.

---

[2]In his traverse, Petitioner frames this claim as a "usurpation of judicial power," using language that does not appear in the petition.  Since this Court is examining a conviction under § 2254, the only relevant question is whether or not the statement that arose from Petitioner's visit to the prosecutor's office was admissible.  It is thus a <u>Miranda</u>

Cunningham's statement admitting association with the co-defendants, and placing him at the crime scene. (Resp.'s Ex. 15 at 28.)

According to Detective Folkes on direct examination "[w]e had gone to the facility with a writ to remove [Petitioner] for the purpose of going in front of the grand jury. Well, just to writ him out of the prison and bring him back to the prosecutor's office . . . ." (Resp.'s Ex. 13 at 28.) On cross, he stated "we went to him as I was instructed to bring him before a grand jury . . . . we had additional information that stated that he may have more knowledge, therefore, we brought him over to be brought before the grand jury." (Id. at 52.) According to Detective Folkes, Petitioner subsequently chose to go to the prosecutor's office for questioning, instead of facing a grand jury. (Id. at 53.)

On petition for post conviction relief, the Superior Court characterized the detective's grand jury justification as a "misrepresentation" since "there was no Grand Jury appearance scheduled that day and, in fact, the Grand Jury wasn't convened for several months later." (Resp.'s Ex. 23 at 27.) However, the Petitioner's statement was not induced by this misrepresentation, but by "his desire to try to exculpate himself" in the face of implicating statements by the co-

———————————————

inquiry, regardless of the terms used to frame the issue.

20

defendants.  (Id. at 28.)  Thus the statement was a voluntary

choice by a defendant aware of his rights, not the result of

"improper conduct on the part of the police."  (Id. at 29.)

Although this Court is concerned by the apparent involuntary

removal of Mr. Cunningham from prison on a false pretext, this

does not speak directly to the admissibility of his subsequent

statement at trial.  As with the Miranda discussion supra, to

"determine the voluntariness of a confession, the court must

consider the effect that the totality of the circumstances had

upon the will of the defendant."  Miller, 796 F.2d at 604.

Although "a lie told to the detainee about an important aspect of

the case may affect the voluntariness of the confession, the

effect of the lie must be analyzed in the context of all the

circumstances of the interrogation."  Id. at 607.  The essential

question is whether statements made "were so manipulative or

coercive that they deprived [the defendant] of his ability to

make an unconstrained, autonomous decision to confess."  Id. at

605.

Nothing in the record contradicts the trial court's finding

that Petitioner was a "very intelligent person" who understood

his rights under Miranda, even before being advised of them again

at the prosecutor's office.  (Resp.'s Ex. 19-20.)  On petition

for post conviction relief, the court determined that the trial

judge's Miranda "findings were fairly based on the evidence and .

. . we will not interfere with his finding that in the totality

of circumstances defendant's waiver was voluntary."  (Resp.'s Ex. 23 at 29.)  Regardless of how Petitioner came to be in the prosecutor's office, the state courts' conclusion that his statement was not motivated by any misrepresentation or coercion, but by a desire to exculpate himself voluntarily, was not an unreasonable application of federal law.  Therefore, the petition will be denied on this ground.

>4.   Violation of Right to Fair Trial: Duress Defense

Petitioner claims, in Ground Five, that his right to a fair trial was denied because the court failed to charge the affirmative defense of duress.  (Pet. at 6a.)  The Supreme Court holds some rights pertaining to a fair trial to be fundamental under the Constitution.  Chambers v. Mississippi, 410 U.S. 284, 294 (1973) (right to fair opportunity to cross examine witnesses and present own witnesses); In re Oliver, 333 U.S. 257, 273 ("right to reasonable notice of a charge . . . to examine the witnesses against him, to offer testimony, and to be represented by counsel.").  Petitioner's claim, however, is a matter of interpretation of the duress defense as defined in N.J.S.A. 2C:2-9.  This claim does not raise an issue under the Constitution or federal law, and cannot support a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

It is worth noting, however, that this claim was soundly rejected by the courts of the State of New Jersey.  On direct appeal, the Appellate Division found:

22

> the defense was negated by defendant's own
> testimony that he voluntarily met his two
> companions in the park knowing that some
> criminal plan was afoot and that he later was
> let out of the car and was free to leave the
> scene altogether . . . .  In any event, we

think it clear that defendant failed to adduce evidence of duress
sufficient to require submission of that defense to the jury.

(Resp.'s Ex. 5 at 5-6.)  Pursuant to Mr. Cunningham's petition

for post conviction relief, the Superior Court examined the

duress issue from the perspective of ineffective counsel, finding

it "inconceivable" that a duress defense would have been accepted

by the jury or charged by the trial court.  (Resp.'s Ex. 23 at

17.)  Although this Court does not reach the merits of

Petitioner's claim because it does not involve a federal issue,

it nevertheless appears to be without substance.

    D.   <u>Inconsistent Verdict</u>

Petitioner claims in <u>Ground Six</u> that, because he was

acquitted of purposeful murder, armed robbery, aggravated

manslaughter, and weapons charges, his conviction for murder in a

shooting death was inconsistent.  (Pet. at 6a.)  In his traverse,

Petitioner frames this issue as a misapplication of felony-murder

for lack of a predicate felony.  (Trav. at 37.)  Respondents

contend that Petitioner is barred from raising this claim by

procedural default because it was not exhausted in the state

courts, or because it does not raise a federal issue.  (Ans. at

24-26.)

Before this Court "can entertain a federal habeas petition, it is well established that a petitioner must first exhaust his federal claims in state court." Johnson v. Pinchak, 392 F.3d 551, 556 (3d Cir. 2004); 28 U.S.C. § 2254(b), (c). Exhaustion requires the Petitioner to "present in substance the same claim he is now seeking to have [this Court] review." Id.

In appealing his conviction, Petitioner claimed two grounds relevant to this habeas petition. First, Mr. Cunningham asserted that the verdict "was against the weight of the evidence" because he was acquitted of all charges involving weapons and for knowing or purposeful murder in a shooting death. (Resp.'s Ex. 2 at 5.) Second, Mr. Cunningham asserted that his felony-murder conviction must be vacated for lack of a predicate felony. (Id. at 11.) He claimed that felony-murder could not be predicated on unarmed robbery alone. (Id.) It appears to this Court that the substance of this claim was appealed and exhausted, but such a determination does not save Mr. Cunningham's petition from dismissal.

Indeed, Respondents correctly assert that Petitioner's inconsistent verdict argument "fails to state a federal constitutional claim." (Ans. at 26.) No matter how Petitioner's argument is framed, he is claiming that a conviction for felony-murder was improper in his case. This interpretation of felony-murder, like the duress defense addressed supra, is a question of state law. The argument is therefore not cognizable as a

24

violation of the Constitution or federal law, and cannot support a habeas corpus petition.

It is worth noting, however, that the state courts soundly rejected this claim.  The trial court, in refusing a motion for new trial, found the jury's felony-murder verdict was based on "absolute clarity" in understanding the charge.  (Resp.'s Ex. 22 at 14.)  The Appellate Division found felony-murder sufficiently established, noting that a death arising from second-degree robbery, or from conspiracy to commit first-degree robbery, suffices under state law.  (Resp.'s Ex. at 9.)  Petitioner's claim under <u>Ground Six</u> appears to be without substance, but it affords him no relief in this Court because it does not raise a federal issue.

III.  <u>CONCLUSION</u>

For the foregoing reasons, this Court denies Petitioner's application for habeas corpus relief pursuant to 28 U.S.C. § 2254.  Mr. Cunningham's petition will be dismissed, and the accompanying Order is entered.


**June 20, 2005**                              **s/ Jerome B. Simandle**
DATE                                          JEROME B. SIMANDLE
                                              United States District Judge

25